**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MFAYUKURERA DANIEL,

 *Petitioner*,

 v.            No. 1:26-cv-00858-SMD-JMR

TODD LYONS, *et al*.,

 *Respondents*.

**<u>ORDER</u>**

Before the Court is Petitioner Mfayukurera Daniel's Petition for Writ of Habeas Corpus ("Petition"), filed on March 23, 2026.  Doc. 1.  Respondents assert that Petitioner is a native of Burundi and a citizen of Tanzania.  Doc. 7 at 1.  Petitioner disputes this account, alleging instead that he is entirely stateless.  *See* Doc. 8 at 2.  According to Petitioner, he was born in 1990 in a refugee camp located in Tanzania, and Tanzanian government does not recognize refugees as citizens.  *Id.* at 2–3.  Petitioner similarly refutes the claim that he is a native of Burundi, maintaining that he has never been to the country.  Doc. 9 at 1–2.  His parents, who were citizens of Burundi, fled after a genocide in 1972, and the family's land was converted into a military base.  *See* Doc. 8 at 4.

On January 29, 2008, Petitioner entered the United States through a resettlement program for refugees from Tanzania.  Doc. 7 at 1; Doc. 8 at 3.  On December 15, 2009, Petitioner became a lawful permanent resident.  Doc. 7 at 1.

On June 3 and August 7, 2014, Petitioner was convicted of two theft offenses.  *Id.* at 1.  On October 30, 2014, Petitioner was charged as removable under the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(i) for having been convicted of two crimes involving moral turpitude.  *Id.*

at 1–2.  On June 17, 2015, an immigration judge ordered Petitioner removed; because Petitioner did not appeal, the removal order became final on July 18, 2015.  *Id.* at 2.

In 2015, Immigration and Customs Enforcement ("ICE") unsuccessfully attempted to obtain travel documents to deport Petitioner to Tanzania.  *Id.*  On March 11, 2016, Petitioner was released on an Order of Supervision.  *Id.*  The parties have not submitted a copy of the Order of Supervision to the Court.

On August 22, 2025, ICE arrested and detained Petitioner after U.S. Citizenship and Immigration Services ("USCIS") denied his application for naturalization.  *Id.*  Respondents assert that ICE re-detained Petitioner to effectuate his removal.  *Id.*

As was the case in 2015, removal attempts have remained unfruitful for approximately ten months.  *Id.*  According to Respondents, ICE submitted multiple travel document requests to the Consulate of Burundi on January 7, February 11, and February 23, 2026.  *Id.*  Those requests remain pending.  *Id.*

## LEGAL STANDARD

An application for habeas corpus pursuant to § 2241 may be granted only if the petitioner "is in custody in violation of the Constitution, or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal.  *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that the district court properly exercised jurisdiction over a habeas petition challenging continued detention without a bonding hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## DISCUSSION

### I. Statutory Framework: 8 U.S.C. § 1231

The parties do not dispute that 8 U.S.C. § 1231 governs Petitioner's custody, since his removal order became administratively final in 2015.  *See* Doc. 7 at 2.

Under § 1231(a)(1), the government has a 90-day period in which to remove a noncitizen after a removal order becomes final.  If the government is unable to effect removal within that 90-day period, continued detention becomes discretionary.  *See* 8 U.S.C. § 1231(a)(6).  Indefinite detention, however, is not permitted.  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention.").

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  *Id.* at 699–700.  If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal."  *Id.* at 699.  The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts."  *Id.* at 701.  After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.  *Id.*

Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*.  *Vo v. Bondi*, No. 2:25-CV-02244, 2025 WL 3653722, at *3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of

3

detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-CV-019, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026).

**II.    Petitioner's Continued Detention Violates 8 U.S.C. § 1231 Because His Removal Is Not Reasonably Foreseeable.**

Respondents argue that although the presumptively constitutional six-month period under *Zadvydas* has elapsed, Petitioner has failed to meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future. *See* Doc. 7 at 4. The Court disagrees. For the reasons set forth below, the Court finds that Petitioner has satisfied his initial burden of proof, and Respondents have failed to rebut this showing.

First, Petitioner's cumulative detention exceeds the presumptively constitutional six-month limit set forth in *Zadvydas*. According to the deportation officer's declaration, Petitioner's removal order became final on July 18, 2015, and he was released on an Order of Supervision on March 11, 2016. Doc. 7-1 ¶¶ 11, 14. The record is unclear as to whether Petitioner was continuously detained during the eight-month period from July 18, 2015 to March 11, 2016. His current detention runs from August 22, 2025 to July 9, 2026, spans more than ten months, and independently exceeds the six-month presumptive threshold. *See id.* ¶ 16.

ICE previously attempted to remove Petitioner in 2015 without success, which resulted in his 2016 release on an Order of Supervision. *See id.* ¶ 14. The record indicates that Petitioner did not appeal the immigration judge's order and cooperated with removal efforts. *See* Doc. 7 at 2.

Since ICE re-detained Petitioner, its removal efforts have proven just as fruitless as they were in 2015. Over the last ten months, the record has shown no progress towards removal. There is no relevant correspondence or record of issued travel documents. *See* Doc. 7 at 2. Despite

having ample time and opportunity to execute the removal order, Respondents have failed to do so. Consequently, Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future.

Tenth Circuit case law supports this conclusion. In *Abiodun v. Musakey*, the court distinguished *Zadvydas*, noting that the *Zadvydas* petitioners faced indefinite detention because "their countries of origin would not accept them." 264 F. App'x 726, 729 (10th Cir. 2008). By contrast, the petitioner's country of origin in *Abiodun* had issued travel documents, and ICE had successfully placed the petitioner on chartered flights, leading the court to find a likelihood of removal in the foreseeable future. The present case is analogous to *Zadvydas* and distinguishable from *Abiodun*. Here, Petitioner has shown that his removal is unlikely in the reasonably foreseeable future, and Respondents have failed to rebut that showing.

Courts in this district have also reached similar conclusions. In *Ndou v. Noem*, the court found no likelihood of removal because no travel documents had been issued and there was no indication that the destination countries were cooperating with immigration authorities. No. 2:26-CV-00220-KWR-GJF, 2026 WL 686564, at *4 (D.N.M. Mar. 11, 2026). Similarly, in *Jimenez Chacon v. Lyons*, the court found removal was not reasonably foreseeable because the government failed to show that any third country was likely to accept the petitioner. 811 F. Supp. 3d 1299, 1310 (D.N.M. 2025) (rejecting the government's argument that a criminal record justifies prolonged detention to secure third country removal, noting that *Zadvydas* itself involved petitioners with significant criminal histories).

### III.    Alternatively, Petitioner's Continued Detention Violates Due Process.

The Court finds that Petitioner's continued detention violates his Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected

liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Under § 241.13(i)(3), ICE must follow specific procedures to revoke a noncitizen's supervised release and return the noncitizen to custody. First, ICE must provide notification of the reasons for revocation. Second, ICE must promptly conduct an informal interview, affording the noncitizen an opportunity to respond to those reasons. Third, the noncitizen may submit evidence showing either compliance with the order of supervision or that there is no significant likelihood of removal in the reasonably foreseeable future. Finally, ICE must evaluate any contested facts to determine whether revocation and continued detention are warranted. § 241.13(i)(3); *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023); *Le Nguyen v. Bondi*, No. 2:25-CV-01198 KWR-JMR, 2026 WL 892491, at *5–6 (D.N.M. Mar. 31, 2026).

Here, the record before the Court does not suggest that these procedures were followed. Because the parties have not attached a Notice of Revocation of Release, it remains unclear from the record whether Petitioner's supervised release was actually revoked. Furthermore, the record contains no mention of an informal interview or any evidence or information presented by Petitioner to rebut the revocation. Similarly, Respondents do not allege any changed circumstances that would justify Petitioner's re-detention and the revocation of his supervised release. *See Le Nguyen*, 2026 WL 892491, at *6.

Petitioner is at least entitled to the "procedures authorized by Congress." *Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001); *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential

standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy."). While the regulations grant Respondents significant discretion, Petitioner has a liberty interest in Respondents properly revoking his Order of Supervision.

Thus, the Court concludes Petitioner has a liberty interest in the procedures under § 241.13(i), which set forth the procedures Respondents are required to follow in re-detaining him. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) ("[T]he Supreme Court has ruled that when Congress enacts a procedure, aliens are entitled to it." (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien is concerned.").

**CONCLUSION**

It is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) The Motion for Leave to File Amended Verified Petitioner for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 13) is **DENIED** as moot;

3) Respondents shall release Petitioner within 48 hours of this Order being entered;

4) Respondents shall facilitate Petitioner's transportation from the detention facility by notifying Petitioner's counsel when and where he can be collected, and by providing all necessary identity and travel documents to return to his primary address;

5) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the

manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements).  Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

6)  Respondents **SHALL NOT** remove Petitioner to any third country without first providing him with constitutionally compliant procedures;

7)  The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**